For almost one hundred years, no other governor has ever shown such contempt for the other two branches of government as Governor Fordice. I agree with the majority opinion which holds that the manner in which this great State's Governor used his veto power under Article IV, Section 73 of the Mississippi Constitution of 1890 was by no stretch of the imagination proper or decorous. Governor Fordice is given the authority to veto legislation. He, however, cannot amend legislation nor can he write legislation. In this case, he has deducted more than $65 million in funds authorized by the legislature. If he has the authority to take such action, then he also has the authority to increase legislative authorizations. If he had decided to augment the authorized funds in this case by $100 million, everyone would have been up in arms! This he cannot do.
In the ninety-six years since our decision in State v.Holder, 76 Miss. 158, 23 So. 643 (1898), no governor has attempted to legislate. Further, Governor Fordice's attempt to invade the third branch of government, the judicial branch, by arguing that he is immune from judicial review when exercising his veto power reveals his indifference to this Court. The issues presented to this Court clearly are grounded in public interest, and the breadth of the importance of this issue is more than apparent. Governor Fordice's actions and arguments surrounding these twenty-nine bills in question expose his disdain for the legislative and judicial branches of Mississippi government. Accordingly, I concur with the majority in holding that Governor Fordice's actions were unconstitutional.
It is imperative that at least one distinction between an appropriation bill and a revenue bill be noted. The Legislature requires that an appropriation bill pass by a majority vote while a revenue bill compels a two-thirds vote for passage. As early as 1938, this Court stated that a majority vote is needed for an appropriation bill to pass. Tatum v. Wheeless, 180 Miss. 800,178 So. 95 (1938). This State's Constitution does not define an appropriation bill, nor does any state statute. That being the case, the sole fitting entity that can define what constitutes an appropriation bill is the Legislature. That is not to say, however, that this Court cannot construe the Legislature's interpretation of a bill if it is in violation of our Constitution. This Court is always vested with that authority. But for the Governor to declare a certain bill an appropriation bill is an evasion of the legislative power and authority. If each Governor of Mississippi could form his own definition of an appropriation bill as he so desired in order to employ his line item veto power, then the Legislature would never know how many votes were needed for the passage of a particular bill. If such were the case, the total votes required for a bill to pass would be a moving target, susceptible to the Governor's whim.
Governor Fordice is authorized, pursuant to Article IV, Section 73 of the Mississippi Constitution of 1890, to veto parts of an appropriation bill; however, this Court finds that House Bills 1613 and 1502 were not appropriation bills. The precedent, since 1890, has been clear. A bill which authorizes the issuance of bonds to be paid over a period of time with an interest to be calculated on the remaining balance has never before been deemed an appropriation bill. We have stated that an appropriation bill is "a fund for the general purposes of running the state government, or providing for the expense of operating the state government." Tatum, 180 Miss. 800, 178 So. at 102. In Tatum,
we determined that monies appropriated for unemployment benefits could not be deemed an appropriation bill since the monies did not go into the general fund for operating expenses. It is a very simple concept to comprehend; anything that does not go into the general fund that operates our government cannot be an appropriation bill. In the case at hand, the monies from the bond bills did not go into the general fund; therefore, in no way, can it be an appropriation bill.
Although the Mississippi Constitution of 1890 does not explicitly define an appropriation bill, it does mandate that an appropriation bill loses its validity if it is not paid within two months after the "expiration of the fiscal year ending after the meeting of the legislature at its next regular session . . ." Article 4, Section 64 of the Mississippi *Page 1047 
Constitution of 1890. If a particular bill is not designated as an appropriation bill but in fact is an appropriation bill, it loses its validity if not paid at the end of the fiscal year after the Legislature adjourns; therefore, an appropriation bill must be designated as such. And as stated previously, who better else to designate a bill as an appropriation bill than the Legislature who knows the true intention of the bill? If the governor is allowed to ignore Mississippi's Constitution of 1890 and the Legislature's interpretation of what is an appropriation or a revenue bill, then our system of government fails. The Legislators adopted joint rules for the Senate and House of Representatives which set forth their operating procedures. Rule 18 of the Joint Rules of the Senate and House defines a revenue bill and states that a three-fifths votes is required for passage:
 All general bill providing for the levying of taxes, borrowing of money, issuing bonds, notes, or other evidence of debt, providing for fees or imposing the issuance of licenses, of whatever kind by the state or any subdivisions thereof, or the exemption of property from state or any subdivisions thereof, or the repeal or amendment of any revenue bill or measure shall be considered as revenue bills, and no revenue bills, or conference committee report thereon, or concurrence in amendments adopted by the other House shall be passed or adopted by either the Senate or the House except by a vote of at least three-fifths of the members of the Senate and House, respectively, present and voting.
Governor Fordice knew at the time he was legislating that, pursuant to Rule 18, the bill in question was definitely a revenue bill. Instead, he clearly ignored the Legislature's definition of a revenue bill and made his own contrary interpretation. This he could not or cannot do.
It is argued in Chief Justice Hawkins' opinion, with Presiding Justice Lee agreeing, that this Court's review of the other twenty-seven appropriation bills passed by the 1993 Legislative Session is not necessary since the Governor did not contest the matter on appeal. To the contrary, if we did not consider this subject matter at this time, the Governor, on an annual basis, could strike, change, amend or rewrite any so-called appropriation bill. And if any legislator brought the matter before a court of competent jurisdiction, the Governor could simply announce that he was not appealing that portion of the lower court's ruling. Such gambit would yield a continuous battle with neither this Court nor the Legislature having a solution to the ever arising, existing problem. See Supreme Court Rule 28(a)(3) ("No issue not distinctly identified shall be argued by counsel, except upon request of the Court, but the Court may, atits option, notice a plain error not identified or distinctlyspecified.") (emphasis added).
Perhaps, if Governor Fordice desires to write law or to offer amendments to proposed laws, then he should hang up his spurs as Governor and run for a position in the Legislature.